856 F.2d 402
 CORNELL UNIVERSITY and New Hampshire Insurance Company, Petitioners,
v.
Alfredo VELEZ; Director, Office of Workers' Compensation
Programs, Benefits Review Board, United States
Department of Labor, Respondents.
 No. 87-2067.
 United States Court of Appeals,
First Circuit.
 Submitted July 27, 1988.
Decided Sept. 9, 1988.
 
 Charles A. Cordero and Cordero, Miranda & Pinto, Old San Juan, P.R., on brief, for petitioners.
 Janet R. Dunlop, U.S. Dept. of Labor, Office of the Sol., George R. Salem, Sol. of Labor, Cornelius S. Donoghue, Jr., Acting Associate Sol., and J. Michael O'Neill, Washington, D.C., Counsel for Longshore, on brief, for respondents.
 Before COFFIN, BOWNES and SELYA, Circuit Judges.
 SELYA, Circuit Judge.
 
 
 1
 This proceeding arises under the Longshore and Harbor Workers' Compensation Act, as amended, 33 U.S.C. Secs. 901-950 (1982 & Supp. II 1984) ("LHWCA" or "the Act"). We have jurisdiction under that section of the Act which authorizes the courts of appeal to review "a final order" of the Benefits Review Board ("Board"). See id. at Sec. 921(c). We explain briefly why, in this instance, we find a remand to be advisable.
 
 
 2
 * There are two petitioners, Cornell University and its insurer. (For our purposes, the interests of the two are identical, so we will sometimes refer to Cornell alone, though encompassing the pair.) Alfredo Velez was an employee of Cornell. On June 30, 1978, while working, Velez claims to have fallen and hurt his back. He thereupon filed a claim with the Office of Workers' Compensation Programs of the United States Department of Labor ("OWCP") seeking compensation under the Act.
 
 
 3
 A hearing was eventually held before an administrative law judge (ALJ). See 33 U.S.C. Sec. 919(c), (d). There was some evidence suggesting that Velez suffered from a preexisting degenerative back condition. Based on this evidence, petitioners attempted to fob off Velez's complaints as the inevitable sequelae of "inorganic disease." In a decision entered on September 27, 1983, the ALJ found that claimant had sustained a permanent partial disability and awarded benefits under the Act. He proceeded to rule that petitioners had preserved their rights under 33 U.S.C. Sec. 908(f) (1982).[1] In so holding, the ALJ acknowledged that Cornell, despite the specific requirement of 20 C.F.R. Sec. 702.317 to the contrary, had not raised the possible applicability of section 908(f) in its LS-18 prehearing statement. Nevertheless, in the judge's view, Cornell's contention that Velez suffered from an inorganic disease was equivalent to pleading the statute. In any event, the ALJ stated that the application of section 908(f) was "prima facie " in the case. He then found that the conditions necessary to invoke and apply section 908(f) had been met.
 
 
 4
 This ruling became, in a very real sense, the focal point of the present controversy. The OWCP had not received any advance notice of the petitioners' intention to rely on section 908(f). It therefore protested the ALJ's allowance of the defense and appealed the ensuing decision to the Board. The OWCP also argued that, even if the statute were properly in the case, the proof failed to engage the statutory gears.
 
 
 5
 The Board took a view of the case at odds with that espoused by the ALJ. It determined that Cornell's naked allegation that Velez suffered from inorganic disease was impuissant to bring section 908(f) into play, and it deemed the ALJ's contrary conclusion irrational. As a result, the Board held that the issue had erroneously been considered. It vacated the award of section 908(f) relief without reaching the question of whether the statute's substantive requirements had been fulfilled. Displeased no little and quite some, petitioners sought judicial review.
 
 II
 
 6
 The scope of our review of the Board's actions is a limited one. We examine the record for material errors of law or for impermissible departure from the familiar "substantial evidence" rubric in connection with the Board's assessment of the hearing officer's factual findings. See General Dynamics Corp. v. Director, OWCP, 585 F.2d 1168, 1170 (1st Cir.1978); Bath Iron Works Corp. v. White, 584 F.2d 569, 574 (1st Cir.1978); see also American Mut. Liability Ins. Co. v. Smith, 766 F.2d 1513, 1515 n. 3 (11th Cir.1985); Fulks v. Avondale Shipyards, Inc., 637 F.2d 1008, 1011 (5th Cir.), cert. denied, 454 U.S. 1080, 102 S.Ct. 633, 70 L.Ed.2d 613 (1981).[2] Mindful of this deferential standard, we turn to the case at hand.
 
 
 7
 It is settled that, in the ordinary course of events, a claim for relief under section 908(f) must be made by the employer at or before the first hearing. See, e.g., Brady-Hamilton Stevedore Co. v. Director, OWCP, 779 F.2d 512, 513 (9th Cir.1985); Verderane v. Jacksonville Shipyards, Inc., 772 F.2d 775, 777-78 (11th Cir.1985); American Bridge Div. v. Director, OWCP, 679 F.2d 81, 84 (5th Cir.1982); cf. General Dynamics Corp. v. Director, OWCP, 673 F.2d 23 (1st Cir.1982) (per curiam). Failure to do so is considered a waiver of the right to such relief. Brady-Hamilton, 779 F.2d at 513; Egger v. Willamette Iron & Steel Co., 9 B.R.B.S. 897, 899-900 (1979). To be sure, there are exceptions to this rule, e.g., Mason v. Bender Welding & Machine Co., 16 B.R.B.S. 307, 309-10 (1984) (employer had no way of knowing that section 908(f) might be implicated until hearing had been held); Tibbetts v. Bath Iron Works Corp., 10 B.R.B.S. 245, 252 (1979) (parties operated under mutual mistake of law, not corrected by ALJ), but petitioners do not come within any of them. A review of the record leaves it as clear as a cloudless summer sky that Cornell did not invoke section 908(f) in the pretrial statement or at the initial hearing. Indeed, the statute was never mentioned at or before that time, and was entirely omitted from the LS-18 pretrial statement.
 
 
 8
 It is, perhaps, open to interpretation whether the questions asked by Cornell's counsel at the hearing were directed at establishing the employer's entitlement to section 908(f) relief, but that is a slender reed at best. Claims for compensation under the LHWCA are controlled by an "extensive set of procedural rules." Verderane, 772 F.2d at 777; see 20 C.F.R. 702.101-.394 (1987). The Board has a right to insist that the rules be obeyed--and the parties to a compensation proceeding have every reason to expect that they (and their litigation adversaries) will be held to reasonable compliance. In this instance, petitioners neglected to observe the rules, and the Board's determination that they failed appropriately to place section 908(f) in issue cannot seriously be faulted. Thus, the Board's reversal of the ALJ's contrary conclusion passes appellate muster.
 
 
 9
 The Board, in effect, stopped at this point. But the halt, we think, was premature. The procedural rules permit expansion of the record "[i]f, during the course of the formal hearing, the evidence presented warrants consideration of an issue or issues not previously considered...." 20 C.F.R. Sec. 702.336(a). If the record is so expanded, the parties, in the ALJ's discretion, are to be given "a reasonable time within which to prepare for [the new issue]," if necessary. Id. The ALJ can invoke this option sua sponte: "At any time prior to the filing of the compensation order in the case, the administrative law judge may in his discretion, upon the application of a party or upon his own motion, give notice that he will consider any new issue." 20 C.F.R. Sec. 702.336(b) (emphasis supplied). If a new issue is introduced in this fashion, "[t]he parties shall be given not less than 10 days' notice of the hearing on such new issue." Id.
 
 
 10
 We are convinced that, in this case, the ALJ seasonably raised section 908(f) on his own initiative. Although he did not advert specifically to the rule, he was apparently relying on it. Why else would the ALJ discuss, as he did, both the lack of notice to the OWCP and the circumstances which rendered Cornell's failure to plead the defense excusable?[3] The question, rhetorical in nature, answers itself; the ALJ meant to raise the issue sua sponte. And nothing prevented him from doing so: the evidence was at least arguably sufficient to come within the integument of the statute, the case was not too far along, and the petitioners' failure to plead the defense was subject to some mitigating circumstances (see supra note 3).
 
 
 11
 This is a case where, for aught that appears, section 908(f) relief might well be deserved. See generally General Dynamics Corp. v. Sacchetti, 681 F.2d 37, 39-40 (1st Cir.1982) (describing requirements for Sec. 908(f) relief).[4] The ALJ's decision to raise the issue himself in the interests of justice seems to have been within his discretion. The LHWCA, we believe, favors the disposition of claims--the allocation of statutory benefits and burdens--on the merits of particular cases. To that end, the powers conferred by 20 C.F.R. Sec. 702.336 are in our judgment most appropriately exercisable to prevent the possibility of manifest injustice.
 
 
 12
 We are cognizant, of course, that the bare invocation of a talismanic phrase such as "serving the interests of justice" would not be enough to require a hearing officer to consider an issue not timely raised. Cf. General Dynamics Corp. v. Director, OWCP, 673 F.2d at 25-26 (discussing party's attempt to reopen proceedings under 33 U.S.C. Sec. 922 to assert an omitted Sec. 908(f) defense). Litigants, after all, must bear some meaningful responsibility. See Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985, 989 (1st Cir.1988) ("Courts, like the Deity, are most frequently moved to help those who help themselves."). But here, when we balance the need to render justice against the systemic interest in demanding timely pleadings which narrow and define the issues, the call seems sufficiently close to allow the ALJ, in the exercise of his wide discretion, to bring the matter up on his own initiative.
 
 III
 
 13
 We need go no further. We all know that justice is a two-way street. Once the ALJ had raised the section 908(f) issue sua sponte, petitioners became entitled to an adjudication of its merits. Conversely, the OWCP was entitled to reasonable notice and an opportunity to prepare to address the issue. See supra at 404; see also 20 C.F.R. Sec. 702.336. The ALJ gave no such notice, thereby effectively depriving respondents of any chance fairly to confront the late-blooming theorem. In these circumstances, we think that the only equitable choice is to remand to allow all parties meaningfully to litigate the issue which the ALJ belatedly brought to the fore.
 
 
 14
 The review petition is granted, the Board's order is quashed, and the cause is remanded for further proceedings in accordance with this opinion and with 20 C.F.R. Sec. 702.336(b).
 
 
 
 [1]
 The statute provides in pertinent part:
 If following an injury falling within [certain subsections of the LHWCA], the employee has a permanent partial disability and the disability is found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide compensation for the applicable period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks whichever is the greater.
 33 U.S.C. Sec. 908(f) (1982). Where applicable, the statute has the effect of limiting the employer's liability, with any further compensation due to the injured worker being paid not by the employer or its insurer, but from the special fund established under 33 U.S.C. Sec. 944 (1982). The Director of OWCP is charged with administration of the fund. See 20 C.F.R. Sec. 701.202 (1987).
 
 
 [2]
 Under 33 U.S.C. Sec. 921(b)(3), "[t]he findings of fact in the decision [of the ALJ] under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." Put another way, inferences drawn by the factfinder must be accepted unless irrational. O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359, 362, 85 S.Ct. 1012, 1014, 13 L.Ed.2d 895 (1965)
 
 
 [3]
 In raising the potential applicability of section 908(f) sua sponte, the ALJ noted that there had been some difficulty in unearthing the facts because Velez, who had foregone counsel, was "somewhat obstinate" and could communicate only through an interpreter. The ALJ also acknowledged that, despite the omission of the section 908(f) issue from the LS-18 pretrial statement, petitioners' counsel "may well have brought the matter up at [the] pre-hearing conference." These findings enjoy adequate record support
 
 
 [4]
 We stress the word "might"; we intimate no view of the merits of the defense